PER CURIAM.
M.J.G.W. (mother) appeals the final order entered by the trial court terminating her parental rights to her 12 year old daughter (child). Concluding that the trial court lacked jurisdiction to terminate her parental rights in light of the limited reservation of jurisdiction at the time the case was closed, we reverse.
All the parties initially resided in Monroe County. On November 4, 1994, the Monroe County circuit court entered an order adjudicating the child to be depen-dant, and placing her in the custody of her paternal grandparents, Joanna and Robert Goetz (grandparents)(case number 93-20-077-DP1). At the same time the court granted the mother reasonable supervised visitation, stating that she could see the child at a minimum of once a week. Visitation was to be supervised by the Department of Children and Families (DCF).
Six months later, the trial court conducted a status review hearing. At the hearing, the mother stipulated that it would be in the child’s best interest to remain in the “permanent custody” of the grandparents provided she be granted visitation. In light of that stipulation, the court closed the case “reserving jurisdiction to decide any issues relating to visitation and custody.” At that point, DCF stated on the record that it would “withdraw as far as any further involvement” in the case. On August 11, 1995, the trial court entered an order which formalized the parties’ agreement and the court’s ruling. The court’s order sets forth the following findings of fact:
1. That the child’s mother herein, ... did knowingly and intelligently agree that the paternal grandparents, ... should have the permanent custody of the minor child.
2. That the child’s mother, ... has admitted that it would be in the best interests of the minor child to give the paternal grandparents permanent custody in that she is not able to properly care for the minor child, ... and the paternal grandparents are.
3. That the only proviso here is that the foregoing custody is subject to visitation by the natural mother, ... which is to occur at such place and to be left to the discretion of the paternal grandmother, Joanna Goetz. Mrs. Goetz will be able to decide whether the visitation shall be supervised or unsupervised and where it shall occur, but at minimum visitation will be allowed to occur at the *904 Guardian Ad Litem Visitation Center in Ocala, Florida.
4. That the request for visitation must be made at least five days in advance to Joanna Goetz by [the mother].
5. That subject to the above, visitation will also be authorized within one (1) day before or after the child’s birthday, Christmas and Easter.
6. It was further agreed between the parties that this file shall be closed with the Court reserving jurisdiction to determine issues pursuant to the agreement heretofore set forth.
The court also ordered and adjudged:
1. That permanent custody of the minor child, ... is hereby vested in and placed with the paternal grandparents/custodians, ... the Court specifically finding that it is in the best interests of the minor child to do so based not only on the stipulation and admission of the mother herein, but on the findings of fact previously set forth in the prior orders on this case.
2. That should the natural mother herein, ... wish to exercise visitation, she must advise the paternal grandmother, ... at least five (5) days in advance. Said visitation is to be left to the discretion of Mrs. Goetz wherein she may decide whether it be supervised or unsupervised and where it will occur, but at minimum or if the place for visitation cannot be determined that it will be at the Guardian Ad Litem Visitation Center in Ocala, Florida.
3. That further subject to the previous paragraph, visitation may also occur within one day before or one day after the child’s birthday, Easter and Christmas.
4.That this case be closed subject to the Court reserving jurisdiction to reopen same to determine issues pursuant to the aforesaid agreement. [Emphasis added].
Nearly three years later, the mother filed a motion to transfer venue of the case from Monroe County to Marion County, citing the fact that all the parties had relocated to Ocala. Receiving no objection from the grandparents, the court granted the motion and transferred the case to Marion County. Upon receiving the file, the Marion County Clerk of Court assigned the matter Case No. 98-97-DP.
Five months later, the mother filed a pro se “Supplemental Petition” to modify visitation. On the same day, she also filed a “Motion for Contempt” seeking to hold the grandparents in contempt for failing to comply with the court’s visitation order. The grandparents responded by filing a pro se pleading advising the court that, after the mother had filed her Supplemental Petition and Motion for Contempt, the parties had reached an agreement as to the issue of visitation. The matter proceeded to a hearing at which time the court approved the agreement reached by the parties which provided that the mother could have weekly supervised visitation with the child at the Guardian Ad Litem Visitation Center (Visitation Center).
Thereafter, problems arose between the parties as to how the supervised visitation was to occur at the Visitation Center. As a result, DCF filed a motion for clarification.[1] Upon consideration, the court ruled that weekly visitation must occur under the supervision of the Visitation Center.
*905 A month later, DCF filed with the court a “Judicial Review Summary and Recommendation.” Of particular importance to this appeal, DCF’s report recommended that the child be removed from the custody of the grandparents and placed in the supervised custody of the mother with the grandparents receiving weekly visitation.[2] The grandparents immediately responded by filing the instant petition seeking the termination of the mother’s parental rights. The petition was filed under the same case number.[3]
Two months later, the trial court conducted a hearing to review the matter and to address the issue of the mother’s visitation pending trial on the grandparents’ termination petition. During the hearing, counsel for the grandparents advised the court that, since DCF was recommending that custody of the child be placed with the mother, the grandparents had no other option but to file a termination petition and then seek to adopt the child in order to maintain custody of the child. In addition, the grandparents requested that the court re-instate the terms of visitation as set forth in the August 11, 1995 order. DCF meanwhile argued that the mother’s supervised weekly visitation should continue. Upon review, the trial court vacated the order granting the mother weekly visitation and reinstated the August 11,1995 order.[4]
The matter proceeded to trial on the grandparents’ termination petition. Upon review of the evidence presented, the trial court issued a written order terminating the mother’s parental rights, placing the child in the permanent custody of the grandparents, designating the grandparents as guardians of the child, and readju-dicating the child dependent.
The mother appeals the order arguing primarily that the Marion County circuit *906 court lacked the authority to address issues concerning the child’s dependency or the termination of her parental rights absent the initiation of a new and separate dependency or termination proceeding, since the instant dependency case was closed on August 11, 1995. We agree.
While the August 11, 1995 order states that the trial court retained jurisdiction “to reopen same to determine issues pursuant to the aforesaid agreement,” such language simply authorized the court to enforce provisions relating to the child’s custody and the mother’s visitation. In all other respects, the case was closed. In order for the parties to invoke the jurisdiction of the circuit court to seek termination of parental rights or readjudication of dependency, a separate petition for dependency or termination must be filed. Thus the grandparents’ petition to terminate the mother’s parental rights, and the mother’s supplemental petition to modify visitation both sought relief which was beyond the scope of the trial court’s jurisdiction.[5] Accordingly, the instant termination order must be reversed for lack of jurisdiction, thereby leaving the August 11, 1995 order in force. Any further proceedings in this case are limited to proceedings to enforce or clarify the August 11,1995 order.[6]
REVERSED.
THOMPSON, C.J., and HARRIS, J., concur.
PALMER, J., concurring and concurring specially, with opinion.

. The record indicates that even though the Monroe County circuit court had closed the dependency case and DCF had withdrawn from the matter, when the case was transferred to Marion County, the file was received by DCF and it assumed the role of monitoring the mother's supervised visits.

. Since DCF's only involvement in the case at this time was the supervision of the mother's visits, it had no authority to file recommendations or to seek a change in custody or visitation.

. Attached to the motion was an affidavit signed by the child's father surrendering his parental rights.

. At the hearing, questions arose as to whether DCF had obtained or reviewed the complete file prior to recommending that the child be reunited with the mother. As a result, the court directed DCF to set the matter for a supplemental judicial review within a month or two, and in the meanwhile to become fully briefed on the file. On March 23, 1999, the mother filed a motion seeking to adjust visitation during the Easter holiday, a hearing was held thereon, and the court ordered that visitation would occur at the Visitation Center. The court’s order expressed its concern about the "apparent lack of preparation by [DCF’s] case manager,” and noted that the recommendation made by DCF regarding reunification, as well as DCF's interjection of itself into the matter, "does not appear to have an articulable factual basis based on documents of record.” The court ordered that DCF "shall review all documents [and] ... detail, in a report to be filed with this court at or before the next Judicial Review, identifying each and every document so reviewed by title and by date, if said document is dated, together with the identification of the Department’s representative who reviewed said documents so that the court will know that those persons in [DCF] who are making recommendations to the court actually have some knowledge of the facts and circumstances surrounding said case which forms the basis for their recommendation.” DCF did not file a report or any other pleading following the entry of the court’s order. On December 16, 1999, during a case management conference conducted prior to trial, the trial court stated that, since DCF had not complied with the court’s order, "the Department will not be heard to make recommendations based on information not revealed to the court as required by the prior court order. And that will be true whether they appear as a party or especially in the nature of Interven-ol or otherwise.” DCF did not participate in the termination trial and has not filed briefs in this appeal.

. No modification petition could properly be filed because no statutory or common law action exists for modification of a custody or visitation order entered in a juvenile dependency proceeding.

. We note that the mother also argued that the trial court erred by making findings of fact that were contrary to the evidence of record and were insufficient to justify termination of her parental rights. See § 39.806(l)(c), Fla. Slat. (Supp.1998). Although we need not address that issue in light of our ruling herein, some guidance may be helpful to avoid faulty termination proceedings in the future. The trial court improperly based its decision to terminate the mother's parental rights upon evidence relating to acts which were committed by the mother prior to the entry of the 1994 disposition order. In contrast, the uncontroverted evidence presented by the mother indicated that, since her legal troubles were resolved in 1994, she has substantially complied with the terms of her probation and the requirements imposed upon her by DCF, she has successfully completed various counseling programs and she had consistently maintained positive visitations with the child when given the opportunity. As such, the grandparents failed to establish by clear and convincing evidence that the mother engaged in conduct toward the child that demonstrates that her continuing involvement in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child. See § 39.806(l)(c), Fla. Stat. (Supp.1998).